317-107-105, Jeff Flatt v. Caterpillar, Inc. We don't want handouts. Did somebody ever say you'd make a dramatic entrance? Yes, or better, reenacting the accident or something like that. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Counsel Christo Scott for Jeffrey Flatt, filing an appeal from the Commission's old attorney, Merrill Trier's decision on the issues of accident causation. There's been numerous cases on this issue the last several years. I think the analysis starts with the mechanism of injury. When we're looking at it, we have Mr. Flatt, a 30-year employee, plus from Caterpillar, who recently retired. He worked on the line-by-line. There's several lines in that department. His was the only area that had a platform riser that Mr. Flatt had to negotiate 50 to 60 times per shift in order to perform his job duties. The riser was 8 inches in height. Let me see if I can advance the ball here and just get to the point where I think maybe we need to concentrate. It involves the identification of the risk. Here, the arbitrator found a compensable neutral risk. Commission determined that instead this was a personal risk, correct? Yes, but in doing that, they did neutral risk analysis. When they're talking about what petitioner didn't put in, how many times the general public would go over, and who would you even call? They went through a pretty lengthy analysis of his personal risk here. But let's just back up for a moment. There are three types of risk that the commission is tasked with evaluating, whether it's a risk distinctly associated with employment, whether it's a neutral risk, or whether it's a personal risk. Here, the commission rejected the arbitrator's determination that this was a compensable neutral risk. Do you agree? I agree. The commission also determined that this was not a risk connected to Kleiman's employment, but instead found that this was a personal risk and therefore decided the issue of risk on that basis. In my reading of it, I think it's a confused opinion as to what they're denying or what prong of the three prongs. And you can concentrate on that here in a moment, and please do. But when we are looking at the commission's decision in terms of its identification of risk, do you agree that the commission's determination is subject to the manifest weight of the evidence standard? Well, no. I'm part of it. Why not? In this case, because I'm not. Not in this case. This is universal. When the commission is tasked with identifying the type of risk, what standard of review is applicable? Generally, it's manifest weight if there's a factual dispute as to how the incident occurred. You can make an argument in this case in terms of if, when we parse it out and we're doing what, what level of risk is categorized, that the facts really are not in dispute. It is an 8-inch riser. There is an acute injury. He is taken out on an ambulance in significant pain. He has to negotiate that standard. What is your testimony? What kind of ambulance arrived? The pain is subsided completely? No. Your Honor, the commission, incorrectly, in talking about causation, pointed to it going down to a level of 4, which was his pre-level status. But if you look at the hospital records, it was actually 6. And he had also been given Norco. And when you have Norco, I would expect your pain to decrease. Prior to the ambulance? What? Prior to the ambulance? No, this happened through from the ambulance to the hospital. And this pain was reported at a 6, not at a 4. And you can't look at this case based upon what just happened. I have to look at the entire circumstance, that he had an acute injury, had significant pain, went to the hospital, he negotiates this 50 to 60 times per day. Okay? So I think those facts aren't disputed. There's no defect. I agree with that. If it's a personal risk, you don't even get to that, do you? As a general statement of the law, if an individual is injured because of a personal risk, you don't examine whether it's a neutral risk or a risk associated with employment. That's the end of the analysis. This is why I can't agree with that analysis, because facts are stubborn things, and it's not your actions or your inclinations. It's what they are. When the commission, when you look at whether it's a personal risk or a neutral risk here, what happened is the reasons they gave, they don't come out and say it's a personal risk. They give a reason like he might need a knee replacement in the future. Well, that's true. He might have a necrosis issue. But they don't come out and say he had a degenerative knee, and the reason that this injury occurred is just because of his personal risk. They make this statement. The commission is of the opinion that Platt's knee gave way due to his degenerative condition and not due to a risk associated with his employment. Seems pretty clear what they're saying there. Right, but they're ignoring the fact that it's an 8-inch step that he has to negotiate this risk 50 to 60 times per day. And then when you look at their analysis of that fact, they have to be held to some standard intellectual analysis on the issue of causation. And it's not there. And going back to the standard of review here for this case, is it your position that we should be reviewing this de novo or for a manifest way there? All right, if we want to get into how I think of this, it's kind of a conundrum. Let me guess. It's going to be de novo. Well, it's de novo and, but I don't think I can make an argument for both. But I think it's parsed out. I think there's one part of it that I have to make a manifest way argument under, and that's on the causation prong of the analysis. Yeah, this isn't related to causation. It isn't related to the accident part of it. I do think it's de novo because I don't think there's really authoritative facts that have anything to do with this incident that is controversial when you're looking at whether this is a neutral risk or not. You can't just ignore that prong of the analysis. And there is no dispute how this accident occurred, and it's an acute injury. That's why I started with the mechanism of injury. That's very important in these fault cases. Like in ADCOT, you start with that mechanism of injury. Then you go to what risk is there associated with it. That's why I hired a professor, which I would normally not do. And some of it is due to young was the law right when ADCOT was coming out. So it kind of was in flux where there was another decision that kind of moved. So what did your professor do? What he says is that when you're going up and down a step, you're putting someone at an increased risk of injury. You take the employee as you find them. So in other words, what you're saying to kind of cut to the chase is you had evidence in here that would establish a neutral risk compensability. Correct. And when they say I didn't put evidence in of how many times the general public would do that. Well, that's quantitative. Qualitatively, you said you had a record to establish qualitatively. So let's stay with that. Okay. So if that's the case, then the noble review might be appropriate if you are arguing the commission chose the wrong point of analysis based on this record. That is my argument. And I think quantitatively we have that argument. And qualitatively, you make the argument of the higher the step is, the standard step is seven inches, the higher you go with the step, the more reaction forces there are between the femur and the tibia, increasing the chance of injury to a person, especially when they have preexisting conditions such as Mr. Flatt and many of us do at his age. It's not a degenerative disease manifest way to the evidence standard. We all have some preexisting conditions. So that one extra inch step does matter in this case, and it changes it qualitatively to what we're generally exposed to because normally everything is uniform in terms of the step. Well, let me focus on the easier issue. All right. Assume you've got a neutral risk that is compensable because it doesn't work frequently, et cetera, and so on, so it arose out of the question. What do you do with Dr. Kornblatt's opinion that there is no causal relationship between this work-related accident and the injury you seek recovery for? Well, if I were writing the commission's decision here, their best argument would have been, not the arguments they gave, would have been to say that Dr. Kornblatt, the only physician in the case, said there was a temporary aggravation of the condition. But his own testimony contradicts that when he says he agrees that Mr. Flatt never returned to his baseline after this incident. So how do you reconcile a conclusory opinion that he contradicts himself? And then if you look at the fact that the injections worked before and he ended up at the doctor for 10 months. After this, the injections don't work. His pain level goes up. His activities of daily living decrease. They make an argument that the x-rays support the fact that there was no cause. It actually supports me because if you have a degenerative knee that is a personal risk that causes this, you would expect a continually slow decline in the person's condition. You would expect that x-ray to progressively worsen. Here we have an acute injury. So I don't think that Dr. Kornblatt's conclusory statement that there was a temporary aggravation has any basis or meat to it because A, it's not supported by the facts, and B, it's contradicted by himself. He can point to zero evidence in this case, zero, that Flatt returned to his baseline after this incident. Never referred for a knee replacement prior, referred after. Knee replacement recommended six, seven months after this incident, after continuous treatment. So that would be my response. I'll probably get more questions, so I'll just start again or pick up. We're almost done because that's pretty much the argument in the case. That's your case? Yeah, I'd like to review my notes, Your Honors, for a second. Oh, sure. Thank you. So I'll make two more points to finalize. Again, I believe the de novo review is appropriate. I think it's manifest way. I think the commission somewhat mixes apples and oranges in their analysis, and it's not clear what facts they're pointing to. But if you look at it from a de novo basis, this case clearly fits into a neutral risk analysis, and that is clear error in my opinion. Secondly, and I want to follow up on talking about the causation opinion and a couple of the other issues and why you come up on manifest way and on the causation issue. And I don't take that standard lightly, and I don't file many appeals to waste our time or counsel's time on this issue, but I do expect when they write a decision against my client that it be based upon the actual record. And so I pointed out earlier where I talked about the pain level going from an 8 to a 4, and it's a 6, and he was given narco. I do take exception to that analysis. That's one of the reasons. I take exception to using the x-rays because, A, I think it supports my case of an acute injury causing the symptoms, but secondly, their own doctor didn't even look at the gold standard, which would be the arthroscopic pictures of the knee. The x-rays in this case are somewhat irrelevant because they didn't tell the whole story. Third, when they say there's no change in this condition between the two exams, before and after by Dr. Borovitch, we have to hold, because the institution's was decided to a standard that we have to cite the record correctly. And when they say there's no change, that's not accurate. Words mean something, and Dr. Borovitch wrote after this instance that there was no significant infusion. Before he had no infusion, now he has infusion. That is evidence of an injury. That's why Dr. Borovitch wrote on that visit that his arthritic condition was exacerbated by this acute injury. And there's no standard to deny a case because he might need a knee replacement. I'm not aware of that in any case. You take the workers, you find them, and did the accident aggravate or accelerate the need for that procedure? And this would be a lot tougher case if some doctor said you need one now and he decided against it, or you're going to need one in a year. He said you may, you may not. But we know in those months beforehand he was functioning. He was not having any type of significant pain limitations on his ability to do work or live. That's the gold standard test for a total knee replacement is pain, and without that you don't do the surgery. So the evidence in this case is actually the reverse. And when they cite those four reasons for it, I think that calls into question the entire reasoning of their decision and why it warrants scrutiny by this court. Thank you. You have time to reply. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning, Judge. Amanda Watson for Respondent in January. And I'll jump right into the heart of the standard review. Contrary to, well, the question of whether an incident arises out of employment, I think is inherently a question of fact. It's appropriate for the commission to consider away those facts and make a decision upon, and the manifest way should apply in this court. When you look at the risk analysis, is it inherent to his employment? I think we're in agreement here that there was no defect. He was not holding anything that would create such a risk. So we have some agreement on the facts. There's no doubt about that. But when we get into that neutral risk analysis and quantitative versus qualitative, while we may have agreed upon facts, the inferences that are being made from those facts, whether we talk about Mr. McCall or whether we talk about Mr. Schneider on behalf of the respondent, those inferences are different. There's not one single inference that could be drawn from this very fact-specific case. And contrary to Petitioner's argument that only one inference can be drawn, I think that there is evidence of a return to baseline. There's evidence that there's a report of 4 out of 10 on pain was his baseline that appeared in the ambulance record, but it also later appeared in the catheter medical record. We also know Petitioner returned to work full-duty within a couple of weeks of this incident. We do know that in his own testimony he testified that while there was no date or it wasn't told to him you need to have a total knee replacement now, that it had been discussed with Dr. Oro with your previous care. There's testimony, I believe it was from Dr. Cappecci, who eventually recommended the total knee replacement, that there was no change in the internal makeup of the knee. There was no internal derangement from the incident as reported. So, again, I want to bring forth that there are agreed-upon facts and then there are differences in opinion with regard to the set, with regard to it was 8 inches high, with regard to he transversed it four times an hour. But the inferences taken from that on the medical side were not in agreement. The other thing I want to get back to is from Mr. Schneider. All of those cases in the neutral risk analysis are so fact-specific and I think the Commission actually did a pretty good job in their decision stating exactly why they felt quantitatively this wasn't an increased risk from the general public, and also qualitatively. Petitioners have cited, in his brief he cited here today, that the 7-inch step is the normal step of daily life. There's a phrase he uses, I think, throughout, but I'm not going to cite it because it's from memory. But his evidence showed that the 7-inch step was pursuant to the international building code. And this was addressed by Mr. Schneider that that actually didn't apply to this step and that the international building code of the 7-inch, I think Mr. Schneider commented, well, in an office environment, that would probably be the typical step that you would encounter. But there's no evidence that an 8-inch step is necessarily outside of the norm. In fact, it complies with OSHA pursuant to Mr. Schneider's testimony. So again, I don't think it takes it to this, it's not a defect. I don't think he's arguing, I think he's arguing it as a qualitative difference in the neutral risk. And with the different opinions and the different inferences, the Commission simply decided that they did not believe it was a qualitative risk and that it does not face a greater degree by petition. Let's go back to that because I think these cases, ultimately, practicing attorneys are going to have to get into this. So we have international building code standards, correct, for the riser heights, is what we're talking about, right, to be specific. And the riser height in building code standards is 7 inches, is that correct? It's correct. So I think Mr. Schneider said that that would be correct for in an office building, in an office setting. Okay. He was specific about that. Right. But OSHA apparently has allowed higher risers in the workplace. It's correct. I believe that's what the testimony says. Okay. Neutral risk is that the general public is exposed to. The general public suggests to me that that would be more in keeping with riser heights in houses, in offices, in places that the general public is generally allowed access to in traverses. OSHA restricts that. OSHA says these are the standards for safety in the workplace and they're different. And is there any evidence in this record to suggest that an additional inch has some type of effect differently on a person than a 7 inch? Yeah. And this is when I would go back on that last point. Does that image matter? Well, it might be into the qualitative differences. Right. And I think that does look qualitative. And we go back to Mr. McCall and what he specifically looked at. And his general findings when he did, he was not specific to this petitioner. He never met the petitioner. He did not look at the steps specifically. Now, this is, McCall is whom? Oh, I'm sorry. This is Petitioner's professor. He wouldn't have to. He wouldn't have to look at Petitioner, would he? No, probably not. No. He's not examining doctor. Right. What I would go back to is he admitted that the handle which Petitioner reported that he used each time to reverse the Y stack, he used. And Mr. McCall testified that that would lessen the force. And he couldn't measure how much it would lessen because he didn't have the exact number involved, whether that be weight or other factors. But that's what he testified to. So he couldn't be specific as to how much that would meet pressure of the one step. So I don't think there is evidence that the 8-inch caused a greater risk than a 7-inch would. And I think it's devoid of evidence. I made the point in my brief that there's a significant difference between the 7 and 8, that they're both normal steps. I go to the capillary tractive case, which was the curve kind of curve. Well, they're not both normal. Formally, they're not both normal steps. If a normal step would be that, which is probably the international, we used to call them VOCA standards, OK, that the general public is exposed to. And then there's OSHA standards, which are definitely workplace standards. Well, again, I think this goes to the question of fact, where there's two different opinions that were weighed by the commission. So what you're saying is that McCall, we can't conclude that because McCall did not have a foundation of these things of weight, of basically not just weight, but the handle, which spreads out the weight, et cetera. So now now you're saying that that the handle is a big deal and we can't say how much it's spread out. Of course, we also have Mr. Schneider saying that the 8-inch isn't basically a normal step. I mean, that was his testimony. Mr. Schneider said it's a normal step. Yeah, I think that was. I mean, I don't want to take his words out of context, but I think he while he agreed, this is what the international building notes. This is a normal step. There's nothing special about this step. This is a normal step that has nothing wrong with it. Well, he's a corporate safety guy who's familiar with the OSHA standards and saying we're not going to get cited as long as we follow these OSHA standards. So that must be normality. And, Your Honor, what I would go back to again is that this is simply evidence that the manifest weight of the evidence standards should apply. And there were differing opinions and there were different inferences taken from the facts of the case. We had a case not too long ago involving a secretary in a courthouse who was ascending steps to the courthouse, and the evidence was that the step height would vary, could be a half inch taller for this one, an inch lower for this one, two and a half inches higher for this one. There was a fair amount of difference between the height of the steps. Commission found it was not a compensable neutral risk from a qualitative standpoint, and we affirmed in that case determining that it was for the commission to evaluate whether or not that constituted a compensable neutral risk. So going back to standard of review here, why would this case be judged by a de novo standard as opposed to a manifest weight? I don't think it should be judged by the de novo standard. I think the case law is clear that these cases should be weighed on a manifest weight. I think that while there's some agreement on the facts of the stare, the facts of how many times each was roasted, the influences that can be taken therefrom are all differing, and therefore it should be subject to manifest weight. So you're saying the commission denied compensability based upon a neutral risk analysis? Well, they did a neutral risk analysis, and I think that they did not find that petitioner carried the burden to prove a compensable risk greater than the general public faced, and then said at the same time, we're faced with evidence that this very could have been a personal risk that the employment did not contribute to, and that's the argument of Respondent that has been from the beginning. I think if you actually look at the arbitrator's decision, arbitrator McCarthy commented in his finding section that he recognized the argument Respondent was making, he recognized there was evidence to support that, but he felt in the primary that the evidence of petitioner that this was a compensable neutral risk, a risk that was faced by a petitioner greater than the degree of the general public, he was swayed by that. The point being that there is evidence on both sides here, and if the manifest weight of the evidence standard is applied, I think the commission's decision should be affirmed based on that standard of review. Of course, the second issue is the medical causation issue, and there's no disagreement between my colleague and I, my opponent and I, that the manifest weight standard should apply. And if that's applied, I think we see that Dr. Cormack did not feel that the need to rehasen the need, the alleged rehasen the need for the total labor placement that was to be expected anyway, that there was no causal relation. The commission specifically found that the need gave way due to degenerative condition and not due to a risk associated with employment. Right? That's a specific line, I think, from the commission's decision to measure on. In support of somewhat of what Dr. Cormack said, again, we have Dr. Pepecci saying there was really no internal derangement from the time of the incident until the time that he saw him months later. So, again, I think there's differing facts on that. They were weighed by the commission in a thoughtful decision, and the manifest weight should apply. And on both issues, respondent Caterpillar respectfully requests the decision of the commission be approved. Thank you, counsel. Counsel, you may reply. A couple points here on this. First, the force stepping down, and I think Dr. McCall talked about it. It's the third law of Newton's physics, and we're talking about force, and there's increased force, and the higher the step is, the more force there is. I don't think that's controverted in this case. Newton's law is in this case? Yeah. In this day, Dr. McCall talked about it being Newton's third law, and the principle of the transitional force between the femur and the tibia when stepping, and why that causes increased reaction forces across the patella femoral joint, and the higher the step, the higher the force. Is that going to be on your next MCLE program? I don't know much more about it than that. I don't know what I want to. But that's why I hired you, because it is important to get into those factors in this case and why there is an increased risk. Well, that is what you are faced with if you're having to prove a compensable neutral risk. From a qualitative standpoint, you've got to have, it seems like, expert testimony or something to indicate that it's qualitatively different in some way. And then from a quantitative standpoint, I don't frankly know how you prove that, because how do you prove what the general public bases on a frequency basis? Mr. Stewart, you know when you say it's pretty much the standard we have from, you know, math. Well, I think there's a lot of quantification out there in certain fields of study. People are carrying things to tell them they walked 10,000 steps. I'm quite sure that there's scientists out there that can give an average general public. It's just lawyers haven't looked into it. The Villa Park six times. It is an illegal way, and they did find it a personal risk. It's the same situation here. For it to be a personal risk, too, I think you've got to have, it has to be due to the degenerative condition. That's what Sisbro says forever. And in this case, that's not the evidence. That's why I have expert testimony, and every doctor says there's increased risk, increased risk of injury, and you have a significant change of condition. The facts don't support a conclusion that this thing is solely due to this degenerative condition. And interesting to note in this case, it's almost like an advisory opinion on causation when this came down because they made a ruling on mixing the personal risk and dismissing the neutral. But just in case we're wrong, which they are, we're going to throw in these factors on causation to stick it to you so you can't win on appeal. And that's the way I read that, and that's what happened in this case. And then when you look at their opinion on causation, it's not even supported by the record, and they give those four reasons. So in this case, they knew, in my opinion, this is just my opinion, that their analysis on the accident part, and there could be reasons why in other decisions then, but there are reasons why that occurred. But then they gave a fallback position, and then they don't even come out and give a full analysis of why that opinion on causation is correct. And that's how I read them. The fallback analysis being? The causation that, you know, the commission says, well, even if we're wrong on the risk analysis in this case, if you read their decision, we're saying, too, that he can't prove that this accident aggravated the condition. Yeah, they went into the third category. Yeah, they went into that. But they threw that in to provide themselves cover for what I thought was not a proper decision. And we decide that how, your theory? How do we decide your theory? You have to look at their analysis. Why would they do that? I mean, I've been doing this a long time, and normally when you come to an issue and you don't prove accident, you stop. And this is not a normal decision. So I'm just saying when I receive this decision. In all fairness, we do see a lot of decisions where the commission will address both accident and causation. So it's not just simply if they find no accident that they'll stop and not proceed to causation. It will be a belt and suspenders approach sometimes. They can't do that. And I agree that you can do that. But there's a reason for it in this case. And I think that they have recognized that there were some weaknesses in their argument. And then I go back to look at their argument and rationale. And I don't see rationale to support the causation opinion, which I think puts their whole opinion in question in this case. And that's why I'm here, because if they had written something that I thought was sufficient, even though I may not agree with it. I wouldn't have been here. I wouldn't be here to take an argument and try to decide this and find out what's going on. But lawyers always plead in the alternative. It's a bond behavior, you know. Well, thank you. Thank you, counsel, both for your arguments in this matter. This morning it will be taken under advisement. A written disposition shall issue.